UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WILLIAM D. DEMERS and | : |
| CORA A. DEMERS | : |
|     Plaintiffs, | : |
|     v. | :   C.A. No. 12-676ML |
| | : |
| ANTHONY R. BUONANNO, M.D., and | : |
| THE CENTER FOR ORTHOPAEDICS, | : |
| INC. | : |
|     Defendants. | : |

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

    Plaintiffs William D. Demers and Cora A. Demers ("Plaintiffs" or "the Demers") have been litigating a medical malpractice suit in the Rhode Island Superior Court against Defendants Anthony R. Buonanno, M.D., and The Center for Orthopaedics, Inc. ("Defendants" or collectively "Dr. Buonanno"), in the course of which Dr. Buonanno issued a subpoena duces tecum on a physician deemed to be a federal employee. The United States of America ("United States"), a non-party in the state court proceeding, promptly removed the proceeding related to the subpoena to this Court pursuant to 28 U.S.C. § 1442(a) for the limited purpose of moving to quash.

    The United States' Motion to Quash Subpoena (ECF No. 2) has been referred to me for a report and recommendation.[1] A hearing was held and the parties were permitted to submit

---

[1] This proceeding was originally referred to me for determination pursuant to 28 U.S.C. § 636(b)(1)(A) (2011). The referral was changed to a report and recommendation, 28 U.S.C. § 636(b)(1)(B)-(C) (2011), because the United States' Motion may be considered dispositive of the proceeding. See, e.g., Caranci v. Blue Cross & Blue Shield of R.I., 194 F.R.D. 27, 31 n.1 (D.R.I. 2000); Yang v. Brown Univ., 149 F.R.D. 440, 442-43 (D.R.I. 1993).

additional written arguments.[2] Because an employee of the United States cannot be compelled to comply with a state court subpoena without a waiver of sovereign immunity, I recommend that the United States' Motion to Quash Subpoena be GRANTED. Because the removal was limited to the issue of enforcement and the doctrine of sovereign immunity divests this Court of jurisdiction to enforce the subpoena, except to grant the Motion to Quash, I further recommend that the Court dismiss this proceeding.

## I. FACTS AND PROCEDURAL HISTORY

This contretemps arises from the desire of both the Demers and Dr. Buonanno to depose Dr. Steven Hokeness in the underlying state court medical malpractice action. Dr. Hokeness, a Public Health Service physician, had provided medical treatment to Plaintiff William D. Demers during the same period when Defendants were providing the treatment at issue in the state court action. Because the Public Health Service with which Dr. Hokeness is associated[3] falls within the ambit of the United States Department of Health and Human Services ("DHHS"), both the Demers and Dr. Buonanno understood that the deposition could not proceed except with the authorization of DHHS.

On January 20, 2012, the Rhode Island Superior Court entered a scheduling order that assigned to Plaintiffs' counsel the task of "taking the necessary steps to take [Dr. Hokeness's] deposition, which steps are a bit more complicated than usual due to the fact that [Dr. Hokeness] is affiliated with a Federal facility." ECF No. 9-1 at 2. After a back and forth with DHHS to which Defendants' counsel was not privy, Plaintiffs made a formal request of DHHS, pursuant to

---

[2] Dr. Buonanno filed an objection to the United States' Motion to Quash Subpoena, but The Center for Orthopaedics, Inc., has not filed any papers in this proceeding. Defendants' counsel indicated that he represented both Defendants at the October 18, 2012, hearing.

[3] Defendants do not dispute that "Dr. Hokeness has been deemed an employee of the Public Health Service pursuant to the Federally Supported Health Care Centers [Assistance] Act of 1992, 42 U.S.C. § 233." United States' Mot. at 1 n.1 (ECF No. 2).

the DHHS Touhy[4] regulations, that Dr. Hokeness be produced to testify as a fact witness concerning medical treatment that Dr. Hokeness provided to Mr. Demers on two specific days: January 14, 2010, and January 26, 2010.  Through inadvertence, Plaintiffs failed to send a copy of the date-limited DHHS Touhy request to Defendants.[5]  As a result, Defendants were unaware that the Touhy request omitted other treatment dates, including the one of most significance to Dr. Buonanno – March 11, 2010.

On April 3, 2012, DHHS responded, finding that "permitting Dr. Hokeness to testify only as a fact witness concerning the medical treatment that he provided to your client, William D. Demers, on January 14, 2010, and January 26, 2010, is in the interests of justice and would promote the objectives of [DHHS]." ECF No. 9-2 at 2.  Like Plaintiffs, DHHS did not provide a copy of the limited authorization to Defendants.  Similarly, when Plaintiffs noticed the deposition of Dr. Hokeness for April 26, 2012 (ECF No. 9-3 at 2-4), nothing in the deposition notice afforded Defendants any hint that Dr. Hokeness's deposition would be limited to treatment on January 14, 2010, and January 26, 2010.

Defendants' first inkling of the limitations imposed by DHHS on Dr. Hokeness's deposition came in a letter received on April 23, 2012, by which the United States informed both parties that Dr. Hokeness did not treat Mr. Demers on January 14, 2010, so that his testimony would be limited to treatment on a single day – January 26, 2010. ECF No. 2-1 at 1.  With three days remaining before the scheduled deposition, Defendants' counsel immediately contacted

---

[4] The Touhy regulations are named after the seminal case of United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951).  They require litigants to follow specific procedures to procure testimony or documents from DHHS employees.  See 45 C.F.R. § 2.4(a) (2012).

[5] While the failure of Plaintiffs to provide a copy to Defendants of their Touhy request left Defendants in the dark regarding the limitations until the virtual eve of the deposition, neither counsel for Plaintiffs nor counsel for Defendants has attempted to throw stones at the other for this unfortunate state of affairs.

counsel for the United States. Following an inconclusive conversation,[6] Dr. Hokeness's deposition proceeded on April 26, 2012.

At the deposition, the United States restricted Dr. Hokeness's testimony to treatment on January 26, 2010. Despite the absence of objection by Plaintiffs (ECF No. 9-6 at 7), when Defendants tried to extract testimony about Dr. Hokeness's treatment of Mr. Demers on other days of interest to them, particularly March 11, 2010, the United States instructed Dr. Hokeness not to answer. At the end of the deposition, Defendants reserved their right to re-depose Dr. Hokeness. Id. at 16.

Promptly after the deposition, Dr. Buonanno sent a Touhy request of his own, seeking authorization from DHHS to reconvene Dr. Hokeness's deposition to inquire about Dr. Hokeness's knowledge of Mr. Demers's care as of 2009 and Dr. Hokeness's treatment of Mr. Demers from March 2010 to the present. ECF No. 2-2 at 1-3. The request made clear that Defendants considered it "imperative [for Dr. Buonanno to] be able to fully explore Dr. Hokeness' care and treatment of Mr. Demers;" it also offered to limit the deposition to less than one hour.

Dr. Buonanno did not receive an immediate response from DHHS and sent a follow-up letter on May 24, 2012, inquiring about the status of his request. ECF No. 9-10 at 2. As of the end of July 2012, Dr. Buonanno still had no response. Frustrated by the ongoing silence, on July 31, 2012, Dr. Buonanno issued the subpoena duces tecum that is the subject of this Motion, purporting to command Dr. Hokeness to appear to testify at a deposition on September 25, 2012,

---

[6] Defendants and the United States dispute the substance of the conferral. Defendants' counsel says he expressed concerns about the limitations on the deposition, while the United States denies that he was clear about his need for testimony on other treatment dates prior to the deposition. At oral argument, Defendants' counsel made clear that he had felt wedged between Scylla and Charybdis – if he tried to stop the deposition, DHHS might not permit it to be rescheduled. If he allowed it to proceed, the United States might or might not permit inquiry into the date missing from the authorization letter. However, the pre-deposition conference did not effectively air these concerns.

4

and bring the originals of "any and all medical records . . . regarding William D. Demers." ECF No. 2-3 at 1-3.[7]

On September 6, 2012, DHHS finally responded to Dr. Buonanno's May 2, 2012, Touhy request and denied authorization to reconvene Dr. Hokeness's deposition, reasoning that Dr. Hokeness had already been deposed so that permitting a second deposition would disrupt his official duties and not promote DHHS's objectives. ECF No. 2-4 at 1-3. Dr. Buonanno requested immediate reconsideration (ECF No. 2-5 at 1-2), which DHHS also denied, reasoning that no additional evidence existed to reverse DHHS's decision not to produce Dr. Hokeness for a second deposition. ECF No. 9-9 at 2-3.

With the subpoena duces tecum issued and served, purporting to compel Dr. Hokeness to appear on September 25, 2012, on September 21, 2012, the United States removed the proceeding related to the subpoena to this Court pursuant to 28 U.S.C. § 1442(a)(1) for the limited purpose of moving to quash.

After the removal, Dr. Buonanno commenced a separate Administrative Procedure Act ("APA") action in this Court. Buonanno v. U.S. Dep't of Health & Human Servs., C.A. No. 12-711ML (D.R.I. filed Oct. 10, 2012). The APA action alleges that DHHS's limitation of Dr. Hokeness's testimony and its refusal to produce Dr. Hokeness at a second deposition was arbitrary, capricious, and unfairly prejudicial. Id. (Compl. ¶¶ 30-33, ECF No. 1). The APA action is now pending.

**II. APPLICABLE LEGAL PRINCIPLES**

The Housekeeping Act, 5 U.S.C. § 301, authorizes federal agencies to promulgate rules to govern discovery and disclosure. Cabral v. U.S. Dep't of Justice, 587 F.3d 13, 22 (1st Cir.

---

[7] The face of the subpoena does not state whether it was issued on behalf of Dr. Buonanno or The Center for Orthopaedics, Inc., or both. The subpoena indicates only that it was issued on behalf of "Defendant." ECF No. 2-3 at 2.

2009). The head of a federal agency may promulgate procedural regulations that govern "the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers and property." 5 U.S.C. § 301 (2011). The Supreme Court upheld the validity of the so-called Touhy regulations in United States ex rel. Touhy v. Ragen, 340 U.S. 462, 468 (1951), explaining that it is appropriate for the head of an agency to proscribe regulations pursuant to the Housekeeping Act. Puerto Rico v. United States, 490 F.3d 50, 61 (1st Cir. 2007); see also Cabral, 587 F.3d at 18.

Touhy is part of an unbroken line of authority holding that a federal employee may not be compelled to obey a state court subpoena contrary to his federal employer's instructions under valid agency regulations. Boron Oil Co. v. Downie, 873 F.2d 67, 69 (4th Cir. 1989). Instead, the state court litigant must request documents and testimony from a federal agency pursuant to the agency's regulations. Puerto Rico, 490 F.3d at 58 (quoting Houston Bus. Journal, Inc. v. Office of Comptroller of the Currency, 86 F.3d 1208, 1212 (D.C. Cir. 1996)). The policy behind Touhy regulations is to conserve government resources when the United States is not a party to a lawsuit and to minimize government involvement in controversial matters unrelated to official business. Boron Oil Co., 873 F.2d at 70.

DHHS has promulgated Touhy regulations to govern when its employees may be subpoenaed to provide testimony or documents. 45 C.F.R. § 2.1 (2012). In state court actions, DHHS employees cannot testify or produce documents unless specifically authorized by DHHS. See id. § 2.3. State court litigants that request testimony or the production of documents must make the request in writing to DHHS and state why the information sought is unavailable by other means and why the testimony is in the interest of DHHS or the federal government. Id. §

2.4(a). DHHS decides whether to permit or deny the request by determining whether the request promotes the objectives of DHHS. Id. § 2.3.

The United States, pursuant to 28 U.S.C. § 1442, can remove a subpoena proceeding without removing the underlying civil action. See Boron Oil Co., 873 F.2d at 68; Swett v. Schenk, 792 F.2d 1447, 1450 (9th Cir. 1986). In this case, the United States' Notice of Removal makes clear that "the United States does not intend to and is not removing the entire civil case against [Defendants]. Rather, the United States is removing only the attempt to enforce the subpoena directing Dr. Hokeness to appear, testify, and produce original medical records . . . ." Notice of Removal ¶ 4 (ECF No. 1).

When the United States removes a case to federal court pursuant to 28 U.S.C. § 1442, as it did in this case, the jurisdiction of this Court is derivative of the state court's jurisdiction. Arizona v. Manypenny, 451 U.S. 232, 241-42 (1981). In 28 U.S.C. § 1442 removal actions, when the "state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal, even though in a like suit originally brought in federal court, the court would have jurisdiction." Smith v. Cromer, 159 F.3d 875, 879 (4th Cir. 1998).

A subpoena served on a federal official acting in his official capacity is an action against the United States subject to sovereign immunity. See Puerto Rico, 490 F.3d at 57-58; see also Cromer, 159 F.3d at 879; Boron Oil Co., 873 F.2d at 69. When a federal agency has not waived sovereign immunity, the state court (and the federal court after removal) lacks jurisdiction to enforce a state court subpoena against a federal employee acting at the agency's direction. Cromer, 159 F.3d at 879; In re Elko Cnty. Grand Jury, 109 F.3d 554, 556 (9th Cir. 1997). "[W]here a subpoena is issued to a non-party federal government agency in conjunction with litigation in state court, the state court may not enforce the subpoena against the federal

government due to federal sovereign immunity, and the federal courts have consistently held that they lack jurisdiction to enforce the subpoena in cases where the government has removed the subpoena proceedings to federal court." Puerto Rico, 490 F.3d at 61 n.6 (citing cases).

State court litigants that disagree with a federal agency's decision after a Touhy request are not without a remedy. "[T]o obtain federal judicial review of a federal agency's refusal to release information, a state-court litigant must request the [discovery] from the federal agency pursuant to the agency's regulations," and if "the agency refuses to produce the requested [discovery], the sole remedy for the state-court litigant is to file a collateral action in federal court under the APA." Id. (internal quotations omitted).[8]

**III. DISCUSSION**

The sole issue in controversy in this removed proceeding is the enforceability of the state court subpoena issued by Dr. Buonanno to Dr. Hokeness, a federal employee.

Dr. Buonanno argues that the subpoena should not be quashed for a potpourri of reasons:

- because DHHS's Touhy regulations cannot be read to allow DHHS to arbitrarily preclude Defendants from conducting a full deposition of Dr. Hokeness's treatment of Mr. Demers;

- because DHHS's authorization for testimony about treatment on January 14, 2010, a date Dr. Hokeness did not provide treatment, demonstrates that DHHS either erred or reached an absurd result in limiting Dr. Hokeness's testimony; and

- because reconvening Dr. Hokeness's deposition for less than one hour is a small disruption in Dr. Hokeness's official duties compared to the critical importance of Dr. Hokeness's testimony in the underlying state court lawsuit, particularly when Plaintiffs have procured testimony while Defendants have not, so that DHHS's impartiality towards the parties has been disrupted.

---

[8] The APA creates a right of judicial review and waiver of sovereign immunity to challenge actions by federal agencies and their employees. See generally Delano Farms Co. v. Cal. Table Grape Comm'n, 655 F.3d 1337, 1343-48 (Fed. Cir. 2011); Puerto Rico v. United States, 490 F.3d 50, 57-58, 61 n.6 (1st Cir. 2007); Clark v. Library of Congress, 750 F.2d 89, 102 (D.C. Cir. 1984).

Emphasizing fundamental fairness, Dr. Buonanno contends that this Court has inherent and equitable power to effectively edit the DHHS authorization letter by substituting the treatment date regarding which Dr. Hokeness was instructed not to answer for the date when Dr. Hokeness provided no treatment and to order DHHS to produce Dr. Hokeness to testify about treatment provided on March 11, 2010, since that is the date that should have been stated in DHHS's authorization letter.  In Dr. Buonanno's view, the Court can order DHHS's counsel to reasonably and properly interpret DHHS's authorization letter, and thereby require testimony on the two dates Dr. Hokeness actually provided treatment to Mr. Demers, specifically January 26, 2010, and March 11, 2010.

All of these arguments may (or may not) be availing in the APA action that Dr. Buonanno has initiated but cannot be considered in this narrow proceeding where the Court's jurisdiction is strictly limited, in that it is derivative of the state court's jurisdiction.  Arizona, 451 U.S. at 241-42.  Dr. Buonanno conceded at oral argument that the United States has not waived sovereign immunity with respect to Dr. Hokeness's testimony.  That ends the matter.  In 28 U.S.C. § 1442 actions, the Court does not have jurisdiction to enforce a state court subpoena absent a waiver of sovereign immunity.  Puerto Rico, 490 F.3d at 61 n.6; In re Elko Cnty. Grand Jury, 109 F.3d at 556.

Where this Court lacks jurisdiction, it follows that it also does not have inherent or equitable power to enforce Dr. Buonanno's state court subpoena.  The subpoena power of a federal court cannot be more extensive than its jurisdiction.  Houston Bus. Journal, Inc., 86 F.3d at 1213 (quoting U.S. Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76 (1988)).  "The federal courts are not free-standing investigative bodies whose coercive power may be brought to bear at will in demanding [discovery] from others."  Houston Bus. Journal,

Inc., 86 F.3d at 1213.  Stated differently, the federal court cannot wield equitable or inherent power when it lacks jurisdiction to enforce a state court subpoena in the first place.

In Puerto Rico, 490 F.3d at 57-59, the First Circuit examined whether federal courts may employ their equitable powers to review agency decisions to permit a non-statutory cause of action when the APA provides a statutory cause of action; it concluded that non-statutory causes of action exist in some circumstances, but not when the APA provides litigants with a means to challenge denials of Touhy requests.  Id. at 57-62 n.6.  Likewise, in Giza v. Secretary of Health, Education & Welfare, 628 F.2d 748, 752 (1st Cir. 1980), the First Circuit rejected arguments that federal courts can enforce state court Touhy requests on the basis of state and federal comity or the Full Faith and Credit Clause.  Puerto Rico and Giza make clear that, under controlling precedent in the First Circuit, this Court does not have inherent or equitable power to enforce state court subpoenas.

Despite the palpably inequitable and inefficient result that two federal cases (this removal proceeding and the APA action) are now pending to protect a federal employee from less than an hour of testimony, Dr. Buonanno's subpoena must be quashed and this proceeding dismissed because the United States has not waived sovereign immunity.

**IV. CONCLUSION**

For the foregoing reasons, I recommend that the United States' Motion to Quash Subpoena (ECF No. 2) be GRANTED and that the Court dismiss the case.  The recommendation for dismissal affects only the limited proceeding to quash the state court subpoena issued by Dr. Buonanno to Dr. Hokeness.  The dismissal does not dispose of the medical malpractice action still pending in state court between Plaintiffs and Defendants, nor does it affect the separate APA action filed by Dr. Buonanno in this Court.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its service. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 2, 2012